IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAMELA WHITE, individually and
on behalf of all others similarly situated,

                OPINION AND ORDER

    Plaintiff,

                08-cv-683-bbc

  v.

PLAYPHONE, INC., MOBILEFUNSTER,
INC. d/b/a FUNMOBILE and
DOE DEFENDANTS 1-20,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a proposed class action for monetary and injunctive relief in which plaintiff Pamela White, on behalf of herself and similarly situated individuals in Wisconsin, alleges that defendants PlayPhone, Inc. and Mobilefunster, Inc. included unauthorized charges on mobile telephone bills in violation of Wisconsin fair marketing and trade practice laws, Wis. Stat. §§ 100.18, 100.20 and 100.207.  On October 31, 2008, plaintiff brought suit in the Circuit Court for Dane County, Wisconsin (Case No. 08-CV-4986).  On November 26, 2008, defendant Mobilefunster, Inc. removed this case to federal court, arguing that diversity jurisdiction exists under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d).

Before the court is plaintiff's motion to remand this case to Dane County and to award her attorney fees and costs. Defendant PlayPhone joins defendant Mobilefunster in opposing the motion. Because minimal diversity exists between the parties, the amount in controversy exceeds $5,000,000 and the number of members in all of the proposed classes is more than 100, this case falls under the jurisdictional grant of the Class Action Fairness Act and was properly removed to federal court. Accordingly, I am denying plaintiff's motion for remand.

From the complaint and the documents submitted by the parties, and solely for the purpose of deciding this motion for remand, I draw the following facts:

## ALLEGATIONS OF FACT

Plaintiff Pamela White is a citizen of the state of Wisconsin. Both defendants Mobilefunster and PlayPhone have their principal place of business in the state of California. Doe defendants 1-20 are yet to be named officers, employees and agents of defendants Mobilefunster and PlayPhone.

Defendants are in the business of charging mobile phone subscriber accounts for a litany of add-on content and services (or add-ons), including informational services such as horoscopes. Plaintiff has maintained and incurred charges from a mobile phone subscriber account. Defendants charge for the add-ons and market, sign up, provide the content for

2

and distribute the add-ons. Add-ons are not included as part of the purchase of a mobile phone or a mobile phone carrier subscription. Instead, they purport to be legitimate third-party charges and appear on mobile phone bills as premium text messages. Add-ons are delivered through mobile phone devices via SMS technology or downloads.

In July 2007, defendants placed multiple add-on or premium text message charges on plaintiff's mobile phone account without her consent. Plaintiff could not use the add-ons that defendants provided because they were not compatible with her mobile phone and mobile phone carrier.

On October 31, 2008, plaintiff sued defendants in the Circuit Court for Dane County on behalf of herself and those similarly situated. The complaint defined two proposed classes:

> PLAYPHONE CLASS: All persons in the State of Wisconsin who received a charge on their mobile telephone bill from Playphone, Inc. that they did not authorize.
>
> FUNMOBILE CLASS: All persons in the State of Wisconsin who received a charge on their mobile telephone bill from MobileFunster, Inc. that they did not authorize.

Dkt. #1, exh. A at 5. With respect to defendants' practices, plaintiff's complaint states the following:

> **Contrary to Federal Trade Commission Guidance and Industry Standards, Defendants Are Profiteering From The Rapidly Growing, But Illegal Practice of Unauthorized Mobile Phone Charges**

3

>	14. The growth of unauthorized premium text message charges has in recent years accelerated at a rampant pace. Juniper Research has reported that as many as 10 percent of all U.S.-based mobile-phone subscribers having already received and been annoyed by SMS spam. . . .
>
>	15. The Federal Trade Commission (FTC) has specifically targeted the practice of "cramming" charges for so-called optional services on telephone bills as a popular, but illegal practice in violation of Section 5 of the Trade Commission Act.
>
> 					* * * *
>
>	17. In an apparent attempt to address such issues, the Mobile Marketing Association ("MMA"), which is the industry trade group for mobile phone content providers, has developed an industry standard code of conduct for providing and charging for mobile phone content, such as content for which Defendants billed Plaintiff and the Class, aimed at consumer protection.
>
> 					* * * *
>
>	20. Defendants each failed to institute business practices consistent with the MMA code of conduct, counter to industry standards and their duties of care to consumers upon whom they levy add-on charges. As a result Plaintiff and the Class incurred the add-on charges at issue.
>
>	21. Defendants chose to repeatedly charge Plaintiff and the Class for add-ons that were not properly authorized, marketed or approved consistent with MMA industry standards, because doing so inured to Defendants' revenue stream in the ballooning premium text message industry.

Id. at 3-5.

In her complaint, plaintiff asks the court to declare that defendants are in violation of Wis. Stat. §§ 100.18, 100.207 and 100.20(5) and Wis. Admin. Code §§ ATCP 123.02

4

and 123.06; award compensatory damages and restitution for all unauthorized charges and order defendants to establish a constructive trust consisting of money received for the benefit of the class; award double damages under § 100.20(5); "cease and desist collection of the subject charges;" and award reasonable attorney fees and costs. Id. at 7-14. Plaintiff "disclaims any recovery and relief on behalf of herself and all other members of the Class in excess of $75,000 per individual." Id. at 2, ¶ 7.

## DISCUSSION

The proponent of federal jurisdiction, in this case defendants, bears the burden of proving contested jurisdictional facts by a preponderance of the evidence. Meridian Security Insurance Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006); Tylka v. Gerber Products Co., 211 F.3d 445, 448 (7th Cir. 2000). In determining whether removal was proper under 28 U.S.C. § 1441, a district court must construe the removal statute narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); People of the State of Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 576 (7th Cir. 1982). In this case, defendants argue that plaintiff's claims are properly removed under the jurisdictional grant of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

"The Class Action Fairness Act creates federal jurisdiction over (and thus allows removal of) multi-state class actions with substantial stakes." Bullard v. Burlington Northern Santa Fe Railway Co., 535 F.3d 759, 761 (7th Cir. 2008). The Act allows federal courts to exercise jurisdiction over class actions in which only minimal diversity exists between the parties, the amount in controversy exceeds $5,000,000 in the aggregate and the number of members of all proposed classes is 100 or more. 28 U.S.C. §§ 1332(d)(2) and (d)(5)(B); 5 Moore Federal Practice, § 23.63[2][a], at 23-309 (2008). Therefore, to establish jurisdiction, defendants must prove that it is more likely than not that, within the limits of the claims actually made by plaintiffs regarding the proposed classes, the jurisdictional requirements of § 1332(d) will be met. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448-49 (7th Cir. 2005) (court must look to complaint to determine plaintiff's actual demands); see also In Re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) ("Jurisdiction is determined as of the instant of removal."). "[O]nce these facts have been established the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." Meridian, 441 F.3d at 541. When equitable relief is sought, such as an injunction or declaratory judgment, "the amount in controversy is measured by the value of the object of the litigation." Macken ex rel. Macken v. Jensen, 333 F.3d 797, 799 (7th Cir. 2003) (quoting Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977)). Additionally, the Court of Appeals

6

for the Seventh Circuit has ruled that "the object [of the litigation] may be valued from either perspective–what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." Id. at 799-800 (citations omitted).

In this case, the only disputed issues are whether the proposed class exceeds 100 members and whether plaintiff's monetary claims exceed the amount in controversy. In support of removal, defendant Mobilefunster has submitted two affidavits from its Business Development Manager, Ed Yip. Yip averred that through October 31, 2008, Funmobile has had approximately 52,000 subscribers with Wisconsin area codes from whom it has earned a revenue of $1.5 million in subscription plan memberships. Dkt. #1, Exh. D. In a supplemental affidavit, Yip declared that through December 31, 2008, Mobilefunster has had approximately 57,000 subscribers with Wisconsin area codes and earned $88,000 in November and December 2008 from selling mobile content to customers with Wisconsin area codes. Dkt. #11. Andrew Page, Chief Financial Officer and Senior Vice President of Operations for PlayPhone, Inc., averred that between 2006 and 2008, PlayPhone had approximately 19,000 subscribers with Wisconsin area codes from whom it earned $689,737 in authorized revenue. Dkt. #12.

Plaintiff does not dispute the accuracy of defendants' numbers. Instead, she contends that defendants have not based their estimates on her actual demands. She contends that defendants have read the complaint too broadly and "improperly enlarge the universe of

7

what is actually alleged" to include relief for all of defendants' charges to every Wisconsin phone number. Dkt. #9. Plaintiff points out that Yip failed to identify how many customers were subject to or how much revenue was earned from <u>unauthorized</u> charges. However, the Court of Appeals for the Seventh Circuit has made it clear that federal jurisdiction does not depend on how much the plaintiff is sure to recover or likely to win. <u>Spivey v. Vertrue, Inc.</u>, 528 F.3d 982, 985 (7th Cir. 2008) (citing <u>Brill</u>, 427 F.3d 446). Defendants do not have to confess liability in order to show that they exceed the threshold requirements. <u>Brill</u>, 427 F.3d at 449. They must demonstrate only what plaintiff is claiming because the relevant questions are "what amount is 'in controversy'" and the number of potential class members. <u>Spivey</u>, 528 F.3d at 985-86.

Plaintiff alleges in the complaint that defendants made unauthorized mobile phone charges on her mobile phone bill and the mobile phone bills of other Wisconsin residents. Given that defendants have had a total of 71,000 Wisconsin subscribers, they have no problem meeting the numerosity requirement. 28 U.S.C. § 1332(d)(1)(D) ("class members" include those who fall within definition of proposed class); § 1332(d)(5)(B) (must count members of <u>all</u> proposed classes in aggregate). Plaintiff points out that defendant Mobilefunster fails to identify whether the 52,000 subscribers that it had as of October 31, 2008 even incurred charges within the statute of limitations period. Plaintiff raises a good point. However, Yip's supplemental affidavit makes clear that Mobilefunster had an

8

additional 5,000 Wisconsin subscribers after October 31, 2008.  Further, defendant PlayPhone clearly alleges that it had 19,000 customers meeting the class definition between 2006 and 2008.  Thus, plaintiff has not shown that it will be legally impossible to have more than 100 members in the proposed classes.  Cunningham Charter Corporation v. Learjet, Inc., 2008 WL 3823710, at *4 n. 3 (S.D. Ill. Aug. 13, 2008) (exact class size need not be determined until later; defendant simply must show at least 100 potential class members).

Similarly, plaintiff has not shown that it is legally impossible for her and the proposed class to collect more than $5 million.  In the complaint, plaintiff seeks declaratory relief, compensatory damages for the unauthorized charges, double damages pursuant to Wis. Stat. § 100.20(5), an order that defendants cease and desist collection of the subject charges and attorney fees and costs.  As plaintiff notes, the complaint does not indicate how often unauthorized charges occurred or how many Wisconsin residents have been affected.  However, plaintiff alleges that defendants "repeatedly" made unauthorized charges and have business practices that are counter to industry standards and part of a "rapidly growing," nationwide practice that has "accelerated at a rampant pace."  Therefore, the complaint puts into controversy the propriety of all of defendants' charges.  Spivey, 528 F.3d at 985-86.

Spivey is analogous to the instant case.  In Spivey, the plaintiff proposed to represent a class of persons whose credit cards had been charged without authorization, alleging that defendant "systematically" submitted unauthorized charges.  Id. at 983.  Relying on

9

affidavits submitted by defendant that its billings for four of the contested 22 programs totaled $7 million in the state of Illinois, the court of appeals found that recovery of more than $5 million was not impossible. Id. at 986. Although the district court found that the defendant's failure to admit what portion of all charges was unauthorized made the judgment amount uncertain, the court of appeals held that "uncertainty differs from impossibility." Id. (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938)). Contrary to plaintiff's assertion, her complaint makes clear that it is defendants' business practice to bill Wisconsin subscribers for unauthorized charges. Because the complaint leaves open the possibility that all of defendants' charges to Wisconsin customers may be unauthorized, all of defendants' Wisconsin revenues are in question.

Defendants admit that they collected almost $2.2 million in add-on charges from Wisconsin residents. It is not clear from Yip's affidavits during which years Mobilefunster collected the $1.5 million in revenue in Wisconsin. However, Yip avers that as of November 2008, the average subscription cost was $9.32 a month and that between November and December 2008, Wisconsin revenue totaled $88,000. Therefore, it is reasonable to infer that at a minimum, Mobilefunster earns $528,000 annually (or $44,000 a month) from Wisconsin subscribers. Using these figures, defendants would have earned a total of $1.74 million between 2006 and 2008, resulting in a possible double damages award of $3.49 million and injunctive relief worth $1.74 million annually. Citing punitive damage awards

in several Wisconsin cases, defendants estimate that plaintiff could be awarded punitive damages in an amount at least three times the compensatory award, or $5.2 million. Neither party has provided an estimate for the pre-removal attorney fees and costs.

In a belated attempt to avoid federal jurisdiction, plaintiff submitted an affidavit with her reply brief in which she avers that she does not seek punitive damages and forever disclaims injunctive relief that would require defendants to stop earning revenues in Wisconsin. Plaintiffs can prevent removal by filing a binding affidavit or stipulation <u>with their complaints</u> limiting their recovery to less than the jurisdictional amount. <u>Oshana v. Coca-Cola Co.</u>, 472 F.3d 506, 512 (7th Cir. 2006). However, plaintiff's affidavit is not binding because she filed it long after she filed her complaint. <u>Matter of Shell Oil Co.</u>, 970 F.2d 355, 356 (7th Cir. 1992) (post-removal amendment to complaint does not authorize remand because jurisdiction is determined at instant of removal). The complaint does not limit the value of the injunctive relief sought by the proposed class. I also agree with defendants that even though the complaint does not specifically seek punitive damages, it leaves open the possibility for them. In any event, whether plaintiff can recover punitive damages is not dispositive because the potential double damage award and injunctive relief are sufficient in themselves to meet the amount in controversy requirement.

11

Because I am satisfied that defendants have met their burden for removal and it is legally possible that this case meets the jurisdictional requirements of the Class Action Fairness Act, I will deny plaintiff's motion for remand.

ORDER

IT IS ORDERED that plaintiff Pamela White's motion for remand, dkt. #8, and request for attorney fees is DENIED.

Entered this 27th day of February, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

12